NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
No. 04-1262
File Name: 05a0731n.06
Filed: August 19, 2005

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPLICATION FOR |
| v. | ) | ENFORCEMENT OF AN ORDER |
| | ) | OF THE NATIONAL LABOR |
| UNITED STEEL SERVICE, INC., d/b/a | ) | RELATIONS BOARD |
| UNISERV, | ) | |
| | ) | |
| Respondent. | ) | |

Before:     **NELSON** and **MOORE**, Circuit Judges, and **RESTANI**, Judge.[*]

**DAVID A. NELSON**, Circuit Judge.   This case is before us on an application for enforcement of a bargaining order of the National Labor Relations Board.   The question is whether the Board abused its discretion in overruling the respondent's objection to a representation election without first having held an evidentiary hearing on allegations that union representatives misrepresented the law to members of the prospective bargaining unit.   Based on the papers submitted to it, the Board determined that the misrepresentations were not sufficiently "pervasive" or "artful" to have compromised the electorate's free choice.

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

We conclude that the Board did not abuse its discretion. The respondent's submission did not, in our view, raise a genuine issue of fact as to the fairness of the representation election. Accordingly, we shall grant the application for enforcement.

I

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, petitioned the Board in December of 2000 for certification as the bargaining representative of the production and maintenance employees of United Steel Service, Inc., doing business as "Uniserv." An election was held the following February, and the union prevailed by a vote of 46 to 34.

Uniserv filed an objection with the Board. It contended that representatives of the union had falsely told members of the prospective bargaining unit that Uniserv was required by law to start negotiations on wages and benefits at the levels then in effect, from which point wages and benefits would only go up. In support of its objection Uniserv submitted unsworn statements from five employees, sworn affidavits from the same employees, and a pamphlet distributed by the union.

The Board's acting regional director filed a report recommending that the Board overrule the objection. The regional director relied on a series of decisions in which the Board held that "misleading campaign statements" are not grounds for setting aside an election. He concluded that "the alleged statements attributed to the [union] did not contain such pervasive misrepresentations or artful deceptions as to affect employee free choice in the election." Uniserv filed exceptions to the report, but the Board rejected them and certified the union as the bargaining representative.

Uniserv refused to bargain, with the result that the union accused it of an unfair labor practice. The regional director filed an administrative complaint, and, after the company filed an answer in which it admitted the union's certification and its own refusal to bargain, the regional director moved for summary judgment. Uniserv opposed the motion on the ground that there were genuine factual issues necessitating a hearing on the fairness of the election.

The Board granted the motion for summary judgment, holding that the company had not raised "any representation issue that is properly litigable in this unfair labor practice proceeding." (Despite this holding, the Board opined that Uniserv's objection to the election had been properly rejected.) The Board ordered Uniserv to bargain with the union, and an order for enforcement of the order is now being sought from this court.

II

Although the application comes in the context of an unfair labor practice proceeding, the underlying issue is whether the Board erred in its disposition of Uniserv's objection to the representation election.[1] The Board's decision to uphold or set aside the results of an election in light of campaign misrepresentations is reviewed for abuse of discretion. See *NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945, 963 (6th Cir. 2000). One way for the Board to abuse its discretion is to "refuse[] to grant an evidentiary hearing when material issues of fact exist as to whether a fair

---

[1]"Because union election proceedings are not directly reviewable by the courts, an employer desiring a judicial determination of the fairness of an election must refuse to bargain with the union. The election may then be challenged in an unfair labor practice proceeding brought against the employer by the NLRB." *Maremont Corp. v. NLRB*, 177 F.3d 573, 576 (6th Cir. 1999).

election was held." *Id.* Uniserv's position is that the Board should at least have conducted a hearing before overruling its objection and certifying the union.

Under Board precedent, an election will not be set aside on the basis of "misleading campaign statements" unless "a party has used forged documents which render the voters unable to recognize propaganda for what it is." *Midland National Life Insurance Co.*, 263 N.L.R.B. 127, 133 (1982). Our court, while agreeing that the Board "should not set aside an election on the basis of the substance of representations alone," has expanded the exception recognized in *Midland National Life*. See *Van Dorn Plastic Machinery Co. v. NLRB*, 736 F.2d 343, 348 (6th Cir. 1984), *cert. denied*, 469 U.S. 1208 (1985). We explained in *Van Dorn*, that

> "[t]here may be cases where no forgery can be proved, but where the misrepresentation is so pervasive and the deception so artful that employees will be unable to separate truth from untruth and where their right to a free and fair choice will be affected." *Id.*

In such cases we will not adhere strictly to the rule of *Midland National Life*. See *id.*

To determine whether a campaign misrepresentation meets the standard articulated in *Van Dorn*, we must consider at least five factors: "(1) the timing of the misrepresentation; (2) whether the employer had an opportunity to respond; (3) the nature and extent of the misrepresentation; (4) whether the source of the misrepresentation was identified; and (5) whether there is evidence that employees were affected by the misrepresentation." *St. Francis Healthcare*, 212 F.3d at 964; see *Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1155 (6th Cir. 1996). "The closeness of the election is an important consideration in evaluating the fifth factor." *Id.*; *cf. NLRB v. Gormac Custom Manufacturing, Inc.*, 190 F.3d 742, 747 (6th Cir. 1999) (citing "the closeness of the election" as a

sixth factor). Upon consideration of these factors, we are not persuaded that Uniserv raised a substantial question as to the fairness of the representation election at issue here.

As we have said, Uniserv provided the Board with statements and affidavits from five members of the prospective bargaining unit. One of these employees, Charles Gray, stated that a union official told him on the day before the election "the law . . . required Uniserv to begin negotiations with the Union on wages and benefits at their current level." Another employee, Albert Moore, said statements made by union representatives at two pre-election meetings "led [him] to believe that if the Union won the election, negotiations with Uniserv on wages and benefits would start with wages and benefits at their current level." The other three employees said union representatives told them before the election that "Uniserv was required to start negotiating with the Union on wages and benefits from their current level and that wages and benefits would only go up from that point."

Uniserv also submitted portions of a pamphlet — titled "Union Predicts Company Tricks" — that the union distributed to members of the prospective bargaining unit sometime before the election. The relevant passages read as follows:

> "The company will tell you that when you negotiate a contract, you'll lose the wages and benefits you already have.
>
> Although it is illegal, the company will say you'll be bargaining from scratch.
>
> Truth: When you negotiate a first contract, you start with the pay and benefits you have now and build on them."

It is undisputed that these representations are false; the law does not require an employer to start from current wages and benefits when negotiating a new contract with a union.**2**  Uniserv's evidence unquestionably shows that the union misrepresented the law.  But we do not think the evidence shows that the union's misrepresentations were so pervasive or artful that they rendered Uniserv's employees unable to make a free and fair choice.

First, with the exception of Mr. Gray's affidavit, none of Uniserv's evidence establishes the timing of the misrepresentations.  Campaign misconduct is more harmful when it occurs a short time before the election.  See *Gormac Custom Manufacturing*, 190 F.3d at 747-48.  Only the misrepresentation to Mr. Gray has been shown to have occurred immediately before the election: the other instances could have occurred days or even weeks earlier.

Second, Uniserv's evidence does not establish that the company was unaware of the misrepresentations and had no opportunity to respond to them.  As we have seen, the evidence admits of the possibility that misrepresentations were made well in advance of the election.  For all we know, Uniserv learned of the misrepresentations in time to refute them.  Uniserv submitted no evidence — such as affidavits stating when and how the company became aware of the misrepresentations — ruling out this possibility.

---

**2**What the law does require is that an employer refrain from using threats to coerce its employees' rejection of a union.  As the Board has said, "[b]argaining may start from "scratch" or "zero" and the employees may be so informed by their employer lawfully prior to an election . . . provided the employer's statements to its employees are not made in a coercive context or in such a manner as to convey to the employees a threat that they will be deprived of existing benefits if they select a union to represent them."  *Belcher Towing Co.*, 265 N.L.R.B. 1258, 1268 (1982), *aff'd in part and rev'd in part on other grounds*, 726 F.2d 705 (11th Cir. 1984).

Third, although it seems likely that the union's misrepresentations were disseminated to a substantial number of employees, there is no evidence that the "bargaining from scratch" issue was of critical importance to most of them. The case at bar is distinguishable, in this respect, from cases such as *St. Francis Healthcare*, where the union's misrepresentations related to an issue that was "hotly contested in the days leading up to the . . . election." *St. Francis Healthcare*, 212 F.3d at 965. It is true that the "Company Tricks" pamphlet challenged the employer's overall credibility — a circumstance tending to undermine the fairness of the election. See *id.* But to the extent that the third *Van Dorn* factor favors Uniserv, we are satisfied that it is outweighed by the other factors.

Fourth, it is undisputed that the union was identified as the source of the misrepresentations.

Fifth, there is no evidence that any employee was affected by the misrepresentations. With the possible exception of the Moore affidavit, Uniserv's affidavits do not say whether the affiants accepted the misrepresentations as the truth. Mr. Gray's affidavit, indeed, suggests that he may have recognized their falsity. The election was not particularly close, moreover, and nothing in the record suggests that the result might have been different absent the misrepresentations. Of the 46 employees who voted in favor of union representation, seven would have had to vote the other way for the result to be different. Even if all five of the affiants voted for union representation, and even if none of them would have done so but for the misrepresentations, a switch of five votes would not have been enough to affect the outcome of the election.

All in all, it seems to us that this case falls within the rule of *Midland National Life* and not the exception elaborated in *Van Dorn*.[3] There is no substantial evidence that Uniserv's employees

---

[3]Uniserv argues that this case is different from the typical case of campaign misrepresentations because the union misrepresented the law rather than the facts. The Board has

were unable to recognize the union's misrepresentations as false propaganda or that the misrepresentations materially affected the fairness of the election.  It follows from this, we believe, that the Board did not abuse its discretion in rejecting — without a hearing — Uniserv's objection to the election.

The application for enforcement of the Board's bargaining order is **GRANTED**.

---

said, however, that the rationale of *Midland National Life* applies to situations involving misrepresentations of law.  See *Metropolitan Life Insurance Co.*, 266 N.L.R.B. 507, 508 (1983). We agree with the Board.